UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MANUEL ANTONIO
HERRERA HERNANDEZ,

    Plaintiff,

    v.            Case No. 24-cv-1251

MARY RUECHEL,
CHRISTOPHER MELLAND,
BRADY ERIEAU,
RYLEE PETERSON,
CAROL KOPP, and
JODY MALONEY,

    Defendants.

## DECISION AND ORDER

  Plaintiff Manuel Antonio Herrera Hernandez, who is currently a pretrial detainee at the Oconto County Jail and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On October 29, 2024, the Court screened the complaint and allowed Hernandez to proceed on various claims against Defendants Mary Ruechel, Christopher Melland, Brady Erieau, Rylee Peterson, Carol Kopp, and Jody Maloney. Maloney answered the complaint on November 25, 2024, and the remaining Defendants answered on January 3, 2025.

  On December 26, 2024, Hernandez moved for leave to file an amended complaint "to add new claims and parties." Because Fed. R. Civ. P. 15 allows a plaintiff at this stage to amend the complaint once *without* the Court's permission, the Court will deny his motion as moot and will docket the proposed amended complaint as the operative complaint. On January 3, 2025, Defendants Ruechel, Melland, Erieau, Peterson, and Kopp filed a motion asking the Court to

screen the amended complaint.[1]  Because 28 U.S.C. §1915A requires the Court to screen all complaints filed by prisoners, the Court will also deny Defendants' motion as moot.

### SCREENING OF THE AMENDED COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. §1915A(b).  In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted.  To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

---

[1] These Defendants have yet to indicate whether they consent to magistrate judge jurisdiction.  They are required to do so within **seven days** of this decision.

2

*Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE AMENDED COMPLAINT

According to Plaintiff Hernandez, Defendants Brady Erieau, Christopher Melland, Mary Ruechel, Roberta Longsine, Dave Rosenfeldt, and Rachel Peterson enforce rules against him that they do not enforce against other inmates because he is Mexican. For example, Hernandez alleges that, on August 19, 2024, upon orders from Ruechel, Erieau took an extra tray of food from him even though other inmates are allowed to eat as many trays of food as they want. He also alleges that over the course of about a year, he was disciplined several times by Ruechel, Longsine, Peterson, and Rosenfeldt for sharing phone time with others even though the handbook does not prohibit sharing phone time and other inmates do it without consequence. Finally, he explains that, after asking to use the toenail clippers, Peterson instructed Melland to stand at his cell door and watch him cut his nails even though other inmates are allowed to use the clippers without being supervised. Hernandez explains that these are only a few examples of the ways these Defendants treated him differently from other inmates who are not Mexican. He also alleges that these Defendants have retaliated against him by giving him conduct reports because he has filed many grievances about their allegedly discriminatory conduct.

Hernandez also asserts that, after Peterson informed him she was sending him to segregation in connection with a food tray incident, he told her to "suit up" because he planned to "kill [him]self right now." According to Hernandez, Peterson shut his trapdoor and walked away, at which time Hernandez began to use a staple to cut his left forearm. He asserts that after about

3

twenty to twenty-five minutes he began to feel dizzy because of the blood. Hernandez asserts that he pressed his emergency call button and staff immediately responded. He further asserts that Defendant Nurse Jody Maloney gave him only a small packet of antibiotic ointment, but no bandage or other treatment, despite saying, "Oh, my God" when she saw his injury. Hernandez explains that he stopped eating for about a week because he was in so much anguish, but Nurse Maloney never once checked on him or his arm injury. Hernandez finally alleges that, despite multiple requests, pictures were not taken of his injury until it was nearly healed.

Hernandez next alleges that, on October 4, 2024, he and another inmate were working out when a third inmate began to act aggressively toward them. Hernandez asserts that the two other inmates are White. He explains that the disagreement was primarily between them, but the allegedly aggressive inmate turned his attention to Hernandez and challenged him to fight while making racist comments. Hernandez explains that he tried to avoid a confrontation by repeatedly closing the inmate's door, but that was unsuccessful, so he pushed the intercom button and explained the situation to the responding officer. According to Hernandez, Longsine then came to his cell with two other officers, gave him tickets for fighting, and took him to segregation. Hernandez states that he tried to explain his position, but she ignored him. He then told her that he was going to file a grievance, and she allegedly responded, "Sue me! You're not going to do anything to me." She further stated, "That's what you do! Suing officers!" Hernandez believes that she gave him tickets in retaliation against him for filing lawsuits. He also highlights that the two other inmates, who are White, were not disciplined as severely as he was.

Hernandez asserts that as a result of that experience, he had a psychological breakdown while in segregation and stopped eating for about a week. According to Hernandez, Rosenfeldt and Peterson responded to a medical form he submitted and checked his vitals. Hernandez assumes

4

they did not call a nurse because no nurse came to check on him. Peterson allegedly asked if Hernandez wanted to speak with mental health, but Hernandez asserts that he declined the offer and instead asked her to call the nurse, but she did not. The next day, Hernandez allegedly passed out and afterwards, a sergeant convinced him to eat a sandwich. Hernandez alleges that a nurse examined him that afternoon and gave him some ibuprofen.

Hernandez next alleges that, on November 4, 2024, Dave Pusich made a racist comment, stating that "All Mexicans look the same." Hernandez states that he felt humiliated and filed a grievance about the incident, but Pusich continues to have access to his housing pod. Hernandez believes Pusich is angry at him because he filed a grievance.

Finally, Hernandez asserts that Defendant Jail Administrator Carol Kopp has consistently denied his grievances. He states that, although she responds to his grievances, she ignores his underlying concern that he is being treated differently than other inmates because of his race.

### THE COURT'S ANALYSIS

Like his original complaint, the main focus of Hernandez's amended complaint is that he is treated more harshly than other inmates because he is Mexican. The Equal Protection Clause of the Fourteenth Amendment provides that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In the context of prisons, however, "[u]nequal treatment among inmates . . . is justified if it bears a rational relation to legitimate penal interest." *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988) (citing *Hudson v. Palmer*, 468 U.S. 517, 522–523 (1984)). Thus, in order to establish an equal protection violation, a plaintiff must allege and prove "the existence of purposeful discrimination." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)). In other words, an inmate must show that he was treated differently than similarly situated inmates and that there was no rational basis for the difference in treatment."

5

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). It is not enough for one to show only that other prisoners were treated differently. "In order to succeed on an equal protection claim, a plaintiff must show intentional or purposeful discrimination suggesting that 'the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.'" *Nkrumah v. Clark*, 977 F.2d 585 (7th Cir. 1992) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

With the foregoing standard in mind, the Court will allow Hernandez to proceed on an equal protection claim against Erieau, Melland, Ruechel, Longsine, Rosenfeldt, and Peterson based on allegations that they enforced rules and procedures against him that they did not enforce against other inmates who are not Mexican. He may also proceed on a claim that Jail Administrator Kopp's refusal to address his grievances about the ongoing racial discrimination by her staff was objectively unreasonable. *See, e.g., Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988) (holding that supervisors who know about misconduct and facilitate it, approve it, condone, or turn a blind eye for fear of what they might see may be liable). However, to the extent Hernandez seeks to sue Jail Administrator Kopp because she denied his grievances about receiving tickets, he may not do so. It has long been held that "[o]nly persons who cause or participate in the violations are responsible, . . . [and] [r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Hernandez also states a First Amendment retaliation claim against Erieau, Melland, Ruechel, Longsine, Rosenfeldt, and Peterson based on allegations that they issued him tickets because he submitted grievances about their alleged mistreatment of him. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (holding that to state a retaliation claim a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation

6

that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action.").

Hernandez may also proceed on claims under the Fourteenth Amendment based on allegations that Peterson's response to his threats of self-harm and that Peterson and Rosenfeldt's refusal to get him medical attention after he stopped eating were objectively unreasonable. *See Pittman v. Madison Cnty., Ill.*, 108 F.4th 561, 570-72 (7th Cir. 2024) (holding that a plaintiff must show that (1) he suffered from an objectively serious condition and (2) a defendant's response to his condition was objectively unreasonable). And he may proceed on a claim that Nurse Maloney's responses to his arm injury and first hunger strike were objectively unreasonable. The Court reminds Herrera-Hernandez that to prevail on his claim, he must show not only that a defendant violated his constitutional rights but that the violation caused him injury or damages. *See Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011).

Hernandez may not, however, proceed against Pusich based on allegations that he made a racist comment because Pusich is not properly joined in this action. Under Fed. R. Civ. P. 20(a)((2), "persons . . . may be joined in one action as defendants if any right to relief is asserted . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and any question of law or fact common to all defendants will arise in the action." This standalone incident involving Pusich does not arise out of the same transactions or occurrences that the other named Defendants were allegedly involved in, and the questions of law and fact underlying the purported claim against Pusich will not overlap with the questions of law and fact underlying Hernandez's claims against the other Defendants. Accordingly, because Pusich is not properly joined in this action, the Court will drop him as a party. *See* Fed. R. Civ. P. 21; *see also* 28 U.S.C. §636(b)(1) (allowing a designated magistrate judge to hear and determine

7

any pretrial matter except those specifically mentioned). The Court offers no opinion on the viability of Hernandez's purported claim against Pusich. If he would like to pursue that claim, he must do so in a separate case.

**IT IS THEREFORE ORDERED** that Hernandez's motion to amend the complaint (Dkt. No. 18) is **DENIED as moot**. The clerk's office is directed to docket the proposed amended complaint (Dkt. No. 18-1) as the operative complaint in this action.

**IT IS FURTHER ORDERED** that Defendant Ruechel, Melland, Erieau, Peterson, and Kopp's motion to review the amended complaint (Dkt. No. 21) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 20, Bill Pusich is dropped as a party because he is not properly joined in this action.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Roberta Longsine and Dave Rosenfeldt pursuant to Federal Rule of Civil Procedure 4. Herrera-Hernandez is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Brady Erieau, Christopher Melland, Mary Ruechel, Rachel Peterson, Carol Kopp, Roberta Longsine, Dave Rosenfeldt, and Jody Maloney shall file a responsive pleading to the amended complaint consistent with the timeframes set forth in the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Milwaukee, Wisconsin this 28th day of January, 2025.

*Stephen C. Dries*
Stephen C. Dries
United States Magistrate Judge