---

**MANUEL ANTONIO HERRERA HERNANDEZ,**

   **Plaintiff,**

   **v.**            **Case No. 24-C-1251**

**LT. MARY RUECHEL et al.,**

   **Defendants.**

---

## DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

---

Plaintiff Manuel Antonio Herrera Hernandez is an inmate at the Oconto County Jail and representing himself in this 42 U.S.C. §1983 action. He is proceeding on claims based on allegations that he was mistreated because of his race, that he was retaliated against because he complained about the alleged mistreatment, and that his threats of self-harm and serious medical conditions were not reasonably addressed. On October 20, 2025, Defendant Jody Maloney filed a motion for summary judgment. Dkt. No. 86. The next day, Defendants Brady Erieau, Carol Kopp, Roberta Longsine, Christopher Melland, Rylee Peterson, Dave Rosenfeldt, and Mary Ruechel also moved for summary judgment. Dkt. No. 102. For the reasons explained below, the Court will grant Defendants' motions and dismiss this case.

### PROCEDURAL ISSUES

Pursuant to the local rules, along with a motion for summary judgment, the moving party is required to file either a statement of material facts to which the parties have stipulated or a statement of proposed material facts as to which the moving party contends there is no material

issue and that entitle it to judgment as a matter of law. Civil L. R. 56(b)(1).[1] Per the rules, the statement of proposed facts should consist of numbered paragraphs containing short factual statements with specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil L. R. 56(b)(1)(C). Defendants submitted proposed findings of fact in support of their summary judgment motion in compliance with the local rules. Dkt. Nos. 88, 104.

The rules require a party opposing a summary judgment motion to file a response to the moving party's proposed facts to make clear to the Court which, if any, of the proposed facts are in dispute. The opposing party must respond to each paragraph. Civil L. R. 56(b)(2)(B). Any uncontroverted fact is deemed admitted for the purpose of deciding summary judgment. Civil L. R. 56(b)(4).

On October 22, 2025, the Court entered a Notice and Order informing Plaintiff that he was required to "respond to each of the proposed findings of fact by agreeing with each fact or explaining why he disagrees with a particular proposed fact." The Court also clarified that Plaintiff would not satisfy this obligation "by simply filing a declaration with his version of the facts" because "Civil L. R. 56(b)(2)(B) requires Plaintiff to respond to *each* proposed fact." Dkt. No. 106. The Court warned Plaintiff that if he "does not respond to a proposed fact, the Court will assume Plaintiff does not dispute the proposed fact and will accept the proposed fact as true, regardless of contrary statements in a declaration." *Id.* (citing Civil L. R. 56(b)(4)).

In response to Defendants' motions for summary judgment, Plaintiff did not respond to Defendants' proposed facts. Instead, he did exactly what the Court instructed him not to do—he simply filed declarations with his version of the facts. Dkt. Nos. 109, 120. Accordingly, as Plaintiff was warned, Defendants' proposed facts are deemed admitted for the purpose of deciding

---

[1] A copy of Civil L. R. 56 was provided to Plaintiff along with the scheduling order. *See* Dkt. No. 35 at 7-8.

2

summary judgment. *See Phoneprasith v. Greff*, Case No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civil L. R. 56(b)(4) regardless of a non-movant's detailed opposition brief, affidavit, and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same); *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (holding that judges may "strictly enforce summary-judgment rules" because "[e]ven pro se litigants are obliged to follow procedural rules").

With these considerations in mind, the Court turns to the substance of Defendants' summary judgment motions.

## BACKGROUND

At the relevant time, Plaintiff was a pretrial detainee housed at the Oconto County Jail, where Erieau, Melland, Ruechel, Peterson, Rosenfeldt, Longsine, and Kopp (the County Defendants) worked as corrections staff. Nurse Maloney is a licensed nurse who works for an agency that is contracted to provide nursing and medical services at the jail. Plaintiff is proceeding on the following claims:

- Fourteenth Amendment Equal Protection claims against Erieau, Melland, Ruechel, Longsine, Rosenfeldt, and Peterson based on allegations that they enforced rules and procedures against him that they did not enforce against other inmates who are not Mexican.
- Fourteenth Amendment Equal Protection claim against Jail Administrator Kopp based on her alleged refusal to address Plaintiff's grievances about the ongoing racial discrimination by her staff.
- First Amendment retaliation claims against Erieau, Melland, Ruechel, Longsine, Rosenfeldt, and Peterson based on allegations that they issued him rule violation citations because he submitted grievances about their alleged mistreatment of him.
- Fourteenth Amendment claims based on allegations that Peterson's response to his threats of self-harm and that Peterson and Rosenfeldt's refusal to get him medical attention after he stopped eating were objectively unreasonable.
- Fourteenth Amendment medical care claim against Nurse Maloney based on allegations that she did not reasonably respond to his six-day hunger strike.

3

Dkt. No. 26 at 6-7.

The gravamen of Plaintiff's amended complaint is that he has been treated unfairly because he is Mexican. While acknowledging that he has broken various jail rules, such as sharing food, allowing others to use his telephone PIN, and assaulting other inmates, Plaintiff asserts that he was punished more harshly than other inmates because of his race. He also asserts that the mental stress from this unfair treatment caused him to engage in self-harm and go on a hunger strike. According to Plaintiff, Defendants' responses to his serious mental health and physical conditions were objectively unreasonable.

More specifically, with regard to Plaintiff's misuse of the telephone, the record shows that, in violation of jail rules, Plaintiff shared his telephone PIN with at least four other inmates over the course of a year. Plaintiff received a minor rule violation citation for the first two incidents but was not punished. For the latter two incidents Plaintiff was punished with 24-hour room confinement, as were the inmates with whom he shared his PIN. Dkt. No. 104 at ¶¶14-23.

With regard to food-sharing, Ruechel explains that on August 19, 2024, she was observing the inmates interact during lunch because the day before Plaintiff had submitted an inquiry form stating that he was having trouble with one of the inmates in his pod. Ruechel asserts that, during her observation, she saw an inmate hand his food tray to Plaintiff, which is against the rules. She radioed Erieau about the violation, and he entered the pod and took the food away from Plaintiff, explaining that sharing food was against the rules. Plaintiff became irate and insisted that the inmate had said he could have the food. Plaintiff then threw his tray, stood up, and said, "Pick it up bitch." Plaintiff called Erieau names several more times then "squared up" to Erieau before walking upstairs. Melland arrived on the pod and ordered Plaintiff to lock in three times before Plaintiff complied. Erieau wrote Plaintiff one minor violation and three major violations for obstructing camera/intercom equipment, refusing verbal orders, possession of a weapon (lunch

4

tray), and making threats of violence or abuse. Melland issued Plaintiff a major rule violation for refusing to transfer to another housing unit. Plaintiff received no citation or punishment for sharing food. Dkt. No. 104 ¶¶24-32.

After Plaintiff was locked down, Peterson instructed Plaintiff to pack up because he was being moved to segregation. Plaintiff responded, "You guys better suit up." Plaintiff did not want to go back to segregation, so he yelled that he would take his own life, although Plaintiff admits that he had no plan to take his life. Peterson asserts that she never saw Plaintiff holding anything that he could harm himself with, never saw him harming himself, and never saw Plaintiff bleeding. Within two minutes, a radio transmission went out stating that Plaintiff was threatening self-harm, and staff responded to Plaintiff's cell. Plaintiff had started to scratch himself with a staple. Plaintiff concedes that the scratch was bleeding only "a little bit" and was treated with antibiotic cream. Dkt. No. 104 at ¶¶33-40.

Plaintiff filed an inmate grievance about the citations he received and Peterson's response to his threats of self-harm. Kopp investigated the incident and personally met with Plaintiff. She removed two of the citations (refusing to transfer and the characterization of the food tray as a weapon). She also concluded that staff had acted reasonably without regard to Plaintiff's race. She noted that Ruechel had been monitoring the pod in response to Plaintiff's written concern about another inmate. Kopp concluded it was appropriate to address Plaintiff's violation of the rule against inmates sharing food. She also noted that Plaintiff was disciplined for acting out after he was told he could not share food; he was not disciplined for sharing food. Dkt. No. 104 at ¶¶41-47.

A couple of months later, on October 4, 2024, Plaintiff got into a fight with another inmate. Longsine reviewed video footage of the incident. Although the disagreement started between two other inmates, Plaintiff was seen repeatedly slamming a cell door on an inmate's arm and wrist.

5

Plaintiff was the only inmate who used force against another inmate. The two other inmates just exchanged words. Based on the video, Longsine concluded that Plaintiff was the aggressor and moved him to a different pod before addressing the other two inmates. Plaintiff was given citations for major rule violations (assault/battery and fighting). The other inmate was given a citation for a major rule violation of only fighting because he did not physically harm anyone. Dkt. No. 104 at ¶¶48-58.

After Plaintiff was moved to segregation, he stopped eating. Staff brought food and water to Plaintiff's cell at every meal time, but Plaintiff refused to eat. On October 10, 2024, six days after he stopped eating, he submitted a medical form that asked if someone could take his vitals. He said he did not feel well and thought maybe his blood sugar or blood pressure was low. He stated that he had a stomachache and headache. He noted that he had not eaten any food and had had only a little to drink. Plaintiff asked that he be allowed to talk to a mental health provider in a different room so the officers could not overhear his conversation.

Nurse Maloney referred Plaintiff to mental health for the next available appointment, but Plaintiff refused to talk to the provider. After receiving Plaintiff's request, Rosenfeldt and Peterson took Plaintiff's vitals, all of which were within normal ranges (blood pressure 143/84, temperature 98.2, Pulse 74, Oxygen saturation 97). Peterson contacted Nurse Maloney, relayed Plaintiff's complaints, and informed her of Plaintiff's vitals. Nurse Maloney updated the jail medical provider, who noted that staff should encourage Plaintiff to eat so he feels better. Dkt. No. 104 at ¶¶59-67; Dkt. No. 88 at ¶¶13-23.

Later that day, at a little after midnight on October 11, 2024, Plaintiff pressed his intercom button and asked to speak to a sergeant but then his speech started to slur and the rest of his request could not be heard. Security footage showed Plaintiff falling and hitting his head. Given his earlier complaint, two sandwiches and milk were brought to his cell. Plaintiff was instructed

6

to eat slowly.  After eating, he said he felt a little better.  Nurse Maloney evaluated Plaintiff when she came in for work.  She noted a small bump on the back of his head and that the right side of his neck was swollen.  The jail provider prescribed ibuprofen and encouraged him to continue eating.  Dkt. No. 88 at ¶¶24-30.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  All reasonable inferences are construed in favor of the nonmoving party.  *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).  The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial."  *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted).  "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id*.  Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

The Court will grant Defendants' motions for summary judgment because no jury could reasonably conclude that Plaintiff's rights were violated.  The Court will address each of Plaintiff's claims in turn.

1. **No jury could reasonably conclude that Erieau, Melland, Ruechel, Longsine, Rosenfeldt, Peterson, or Kopp violated the Fourteenth Amendment when they enforced jail rules and procedures.**

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To establish a prima facie case of discrimination under the Equal Protection Clause, a plaintiff must show that (1) he is a member of a protected class, (2) the defendant treated similarly situated people outside the protected class better, and (3) the defendant did so intentionally based on his classification. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005).

Plaintiff's claim fails because there is no evidence from which a jury could reasonably conclude that officers enforced rules against him only because he is Mexican. Indeed, there is no evidence that he was treated more harshly than other inmates. To begin, the evidence shows that non-Mexican inmates received the same discipline he received for improperly sharing a telephone PIN. The evidence also shows that Plaintiff was *not* disciplined for sharing another inmate's food, as he suggests, but was disciplined for his outrageous conduct in response to being told he could not have another inmate's food. Plaintiff asserts that he was being watched more closely than other inmates, but the record shows that he was being watched because he had expressed concerns about another inmate. And, finally, the evidence shows that he received harsher discipline than the other two inmates involved in the altercation because he was the only one of the three inmates who escalated from words to physical violence. Accordingly, the only reasonable conclusion is that the disciplinary action officers took against Plaintiff was because of Plaintiff's disruptive behavior, not because he is Mexican.

Similarly, Plaintiff's claim against Jail Administrator Kopp fails because there is no evidence suggesting that she turned a blind eye to Plaintiff's complaints about how he was being

treated. The evidence shows that Kopp met personally with Plaintiff's complaints, removed duplicative citations, and investigated why officers had disciplined Plaintiff. For the same reasons explained above, Kopp concluded that Plaintiff was disciplined because of his own misconduct, not because of his race. Accordingly, no jury could reasonably conclude that she facilitated, approved, condoned, or turned a blind eye to Plaintiff's allegations that officers were treating him differently because of his race. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Defendants are therefore entitled to summary judgment on this claim.

2. **No jury could reasonably conclude that Erieau, Melland, Ruechel, Longsine, Rosenfeldt, and Peterson retaliated against Plaintiff when they issued him rule violation citations.**

To prevail on a retaliation claim, a plaintiff must prove that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Moreover, the Supreme Court has explained that "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019).

Plaintiff can satisfy the first and second prongs, but for the reasons explained above, there is no evidence from which a jury could reasonably conclude that Plaintiff satisfies the third prong. The undisputed evidence shows that Plaintiff broke numerous jail rules: He improperly shared his telephone PIN, threw his food tray, refused to lock in, argued with jail staff and called them derogatory names, and physically assaulted another inmate. No jury could reasonably conclude

9

that Plaintiff filing inmate complaints about being treated unfairly was the "but-for cause" of the discipline. Again, the only reasonable conclusion is that he was disciplined in response to his outrageous misconduct. Defendants are therefore entitled to summary judgment on this claim.

**3. No jury could reasonably conclude that Peterson, Rosenfeldt, or Nurse Maloney responded unreasonably to his threats of self-harm and/or six-day hunger strike.**

The undisputed evidence shows that, after Peterson informed Plaintiff he was going to be moved to segregation, he became enraged, told her "you guys better suit up," and then yelled that he was going to take his life. Peterson explains that she did not see Plaintiff take any steps to harm himself and did not believe he had any means by which to harm himself. She admits that she walked away from his cell, but explains that, within two minutes it was communicated over the radio that Plaintiff was threatening self-harm and needed to be removed from his cell. In that time, Plaintiff found a staple and started to scratch his arm with it. He admits that the scratch was treated with nothing more than antibiotic cream.

Plaintiff's "claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort . . . without then developing evidence of a recoverable injury." *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). To succeed on a §1983 claim, a plaintiff must establish not only that a defendant violated his rights, but also that the violation caused the plaintiff injury or damages. *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011). As the Seventh Circuit has explained "minor scratches, quickly and easily treated" do not equate to a cognizable harm. Accordingly, Peterson is entitled to summary judgment on this claim.

Peterson, Rosenfeldt, and Nurse Maloney are also entitled to summary judgment on Plaintiff's claim that they did not respond reasonably to his six-day hunger strike. The undisputed evidence shows that officers brought food and water to Plaintiff's cell at every meal, but Plaintiff refused to consume it. The evidence also shows that, after Plaintiff reported that he was feeling

unwell from not eating, Peterson and Rosenfeldt took his vitals and reported them to Nurse Maloney, who in turn reported them to the jail medical provider. At that point, Plaintiff's vitals were all within normal ranges and he was coherent and able to communicate. Everyone encouraged Plaintiff to eat in order to feel better. Plaintiff refused to do so. Hours later, after he pressed his emergency call button in the middle of the night, officers reported to his cell with food and milk. Plaintiff finally ate some food and reported feeling better. Nurse Maloney checked on him when she arrived at work in the morning. At no point was Plaintiff in need of emergency care. At all times, Plaintiff remained capable of solving the problems that he himself had created—he simply needed to choose to eat, and after he did, he felt better.

To prevail on his claim, Plaintiff needed to provide evidence that 1) his medical condition was objectively serious; 2) Defendants acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and 3) Defendants' actions were objectively unreasonable— that is, "not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose." *Hardeman v. Curran*, 933 F.3d 816, 827 (7th Cir. 2019) (Sykes, J. concurring). No jury could reasonably conclude that Peterson, Rosenfeldt, and Nurse Maloney acted unreasonably in response to Plaintiff's decision not to eat. Indeed, it is not clear what else they could have done. Plaintiff asserts that they should have checked his blood sugar, but he does not explain what difference that would have made. Plaintiff did not need the test results to know he was experiencing side effects from six days without food—he knew that he was weak, that his stomach and head hurt, and that he was lightheaded. He also did not need the test results to know how to address those side effects. Staff had repeatedly encouraged Plaintiff to eat, and it was Plaintiff's decision not to. The only reasonable conclusion is that it was Plaintiff who acted unreasonably, not Peterson, Rosenfeldt, or Nurse Maloney. Accordingly, they are entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to file a supporting declaration (Dkt. No. 121) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motions for summary judgment (Dkt. Nos. 86, 102) are **GRANTED** and this case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 26th day of March, 2026.

William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

12